UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| U.S. RAIL CORPORATION, et al., | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
|      vs. | )  CAUSE NO.  1:08-cv-585-WTL-DML |
| | ) |
| WILLIAM B. STURCH, et al., | ) |
| | ) |
|    Defendants. | ) |

### ENTRY ON MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court on the motions for summary judgment filed by the various Defendants (dkt. nos. 111, 112, and 116). The motions are fully briefed and the Court, being duly advised, **GRANTS** all of the motions as to all of the Plaintiffs' claims and **DISMISSES WITHOUT PREJUDICE** the counterclaim of Defendant William Sturch for the reasons set forth below. Also before the Court is a motion to reconsider filed by the Plaintiffs (dkt. no. 173) which, as set forth below, is **DENIED**.

### MOTION TO RECONSIDER

On December 30, 2009, the Magistrate Judge assigned to this case entered an order which resolved several pending motions. On January 27, 2010, the Plaintiffs moved for reconsideration of one aspect of that order: the Magistrate Judge's ruling striking the affidavit of Gabriel Hall. The Plaintiffs purport to move pursuant to Federal Rule of Civil Procedure 59(e); however, that rule is inapplicable to the Magistrate Judge's ruling, which was not a "judgment." That said, however, the Court has reviewed the Plaintiffs' motion and hereby **denies** it. Even if the Magistrate Judge's ruling were erroneous (and it was not)–indeed, even if she had not entered it in the first place–the Court would not have considered the affidavit of Gabriel Hall in

ruling on the instant motion for summary judgment because it was expressly based upon Halls' "information and belief," not his personal knowledge. *See Weiss v. Cooley*, 230 F.3d 1027, 1034 (7th Cir. 2000) (affidavits based upon "information and belief" do not satisfy the personal knowledge requirement for affidavits); *Price v. Rochford,* 947 F.2d 829, 832 (7th Cir. 1991) (affidavit based on information and belief "insufficient for the purposes of opposing a motion for summary judgment"); *Schertz v. Waupaca County,* 875 F.2d 578, 582 (7th Cir. 1989) ("The district court properly declined to consider matters not testified to on personal knowledge of the affiants."). Accordingly, there is no basis for reconsidering the Magistrate Judge's order striking the affidavit.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c)(1) provides that summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

**BACKGROUND FACTS**

The facts of record relevant to the Plaintiffs' claims, viewed in the light most favorable to the Plaintiffs, as the non-moving parties, are as follow.

Plaintiffs US Rail Corporation and US Rail Corp. (hereinafter collectively referred to as "US Rail")[1] are in the business of providing railroad services. Defendant National Starch LLC ("National Starch") operates a manufacturing facility in Indianapolis that is located on 125 acres ("the Plant"). To support its manufacturing operations, National Starch hires independent railroad switching companies to transport railcars inside the Plant. The railcar switching companies hire their own switch crew, are required to maintain their own locomotives at the Plant, and are required at all times to comply with all safety procedures and regulations. Defendant John Rusk is the bulk operations supervisor at the Plant. As such, Rusk is responsible for railcar movements, customer shipments of filled railcars and bulk starch trucks, and overseeing the operation of the switch crew. Defendant Kevin Holding is a procurement specialist for National Starch and as such is involved in its bidding and procurement procedures.

In late March or early April 2007, National Starch decided to engage in a public bid process for its railcar switching needs at the Plant. As part of that bid process, National Starch formulated criteria it required from the railcar switching company. National Starch then invited railcar switching companies to participate in the electronic bidding event. The Instructions to Bidders included the following provision:

---

[1] The parties do not distinguish between the two Plaintiffs in their briefs.

> [National Starch] will enforce safety regulations and has the authority to stop the work and require immediate corrective action if it determines that unsafe conditions exist.  NOTICE TO BIDDERS:  Contractors are hereby advised that any violation of the safety procedures by Contractor's employees, subcontractors, suppliers, or vendors will be grounds for immediate termination of this contract.

The bid notice further provided that the term of the contract to be awarded would be thirty-six months.

In response to National Starch's bid invitation, Plaintiff US Rail Corporation ("US Rail") submitted a written bid entitled Proposal for Industrial Railroad Switching and Inspection Service (hereinafter "Bid Proposal") in June 2007.  The Bid Proposal did not include a duration for the proposed contract between U.S. Rail and National Starch.  National Starch awarded the bid to US Rail on or about July 5, 2007, and US Rail began providing railcar switching services at the Plant on August 1, 2007.  Pursuant to National Starch's recommendation and in an effort to ensure a smooth transition, US Rail hired the same crew that had worked for the prior switching company at the Plant.  US Rail General Manager Kenny Smith was responsible for the services provided at the Plant.

Although US Rail was awarded the bid and began providing services, the parties were still negotiating the terms of the formal contract that would govern those services.  On or about July 5, 2007, Gabriel Hall, President of US Rail, sent National Starch a copy of its standard railroad services agreement and asked National Starch to "[l]et me know your thoughts."  On or about August 14, 2007, Defendant Rusk responded on behalf of National Starch, sending a "red-lined" version of the form agreement with substantial suggested revisions.  On August 28, 2007, the parties held a conference call to discuss the contract terms, during which it was agreed that Hall would send National Starch another revised draft.  He did so by email on September 4,

2007. Rusk told Hall that the draft would be reviewed by National Starch's procurement department and then by its legal department. By March 2008, no contract had been executed and the parties were still negotiating certain terms of the contract, including insurance and fuel costs. During a March 2008 telephone conference, Hall inquired about the status of the draft contract he had provided National Starch in September; Rusk reported that National Starch's legal department was still reviewing it.

Defendant Brandon Sturch began to work as train master for US Rail at the Plant in November 2007. Shortly thereafter, he began to notice problems with US Rail's locomotives that constituted safety issues. As the train master, Sturch was directly responsible for the safety of railcar switching at the Plant. Sturch expressed his concerns regarding US Rail's locomotives to National Starch through Rusk on several occasions.

The Federal Railroad Administration ("FRA") conducted an inspection at the plant on November 28, 2007. The FRA found excessive brake cylinder piston travel on a US Rail locomotive being used at the Plant. Excessive brake cylinder piston travel in a locomotive is a safety concern.

In addition, there were on-going problems with the performance of US Rail's locomotives in terms of their ability to pull loads. In order to address that problem, US Rail instructed its employees at the Plant to use two locomotives in tandem. On February 20, 2008, while the locomotives were being used in tandem, a derailment occurred at the Plant that damaged one of US Rail's locomotives. Following that derailment, Rusk contacted US Rail and expressed concerns regarding the safety of US Rail's locomotives at the Plant and whether it was safe to run them in tandem. US Rail took the damaged locomotive ("Locomotive 115") out of

service[2] and leased a replacement locomotive.

On March 11, 2008, the FRA conducted another inspection at the Plant. That inspection revealed numerous safety violations in the locomotive that remained in service, leading the inspector to state in his report that "[d]ue to the serious nature, and excessive number of the defects, the locomotive was not in proper condition and was unsafe to operate." In fact, the FRA inspector told Rusk that the locomotive was in the worst condition of any in-service locomotive he had seen in 41 years. The inspector also called Kenny Smith and told him the locomotive was unsafe to run.

Even prior to the March 11th inspection, National Starch had been concerned enough with US Rail's safety and performance issues that it had had internal discussions about the need to have a contingency plan in case it became necessary to replace US rail as its railcar switching service provider. It was very important to National Starch that it avoid any disruption to its rail switching service because that would cause a costly disruption to its manufacturing operations at the Plant. Immediately following the March 11th inspection, Defendant Rusk contacted Mark Bradshaw at Railserve to determine whether Railserve would be interested in providing railcar switching services at the Plant.

Around 11:00 a.m. on the morning of March 17, 2008, Rusk received a phone call from

---

[2]The Defendants allege that the damaged locomotive was not taken out of service until the day of the second FRA inspection, and then only so that it would not be inspected. They further allege that US Rail instructed its employee to continue to use the two locomotives in tandem even after the derailment. While the Plaintiff failed to submit any contrary evidence along with its Response, the Court notes that the deposition of Kenny Smith , which is part of the summary judgment record, does contain such evidence. In order to give the Plaintiff, as the non-moving party, every benefit of the doubt, the Court therefore has considered Smith's testimony, found these facts to be controverted, and now views them in the light most favorable to US Rail.

Sturch informing him that the entire US Rail switch crew had walked off the job site in protest of the disciplinary action that was announced that day against several employees relating to the February derailment as well as on-going safety and payroll issues. These on-going concerns by the employees had been discussed with Rusk before. After speaking with National Starch management, Rusk informed Gabriel Hall that National Starch was terminating its relationship with US Rail. National Starch and Railserve agreed that Railserve would begin providing railcar switching services at the Plant. Railserve employees underwent National Starch's safety orientation that evening, and the next day, March 18th, Railserve began providing railcar switching services at the Plant. Railserve's services cost National Starch more per month than US Rail's did.

## DISCUSSION

The Plaintiffs' Second Amended Complaint contains four claims. Against National Starch, the Plaintiffs assert a breach of contract claim, a claim for money due on account, and a conversion and trespass claim. Against all of the remaining Defendants, they assert a claim for tortious interference. In addition, Defendant Sturch has asserted a counterclaim for wages he alleges he is owed by US Rail. Each of these claims is addressed, in turn, below.

### *Breach of Contract Claim*

US Rail alleges that it had a contract with a three-year term with National Starch and that National Starch breached that contract by terminating its services at the Plant. While US Rail acknowledges that no formal contract had been executed by the parties, it argues that "[i]n Indiana, where there is a written proposal for work to be done, a written bid of a party to do the proposed work, and a written acceptance of the bid, that amounts to a contract to do the proposed

work, even though a formal contract to do the work has not been executed." US Rail Response at 6 (citing *Pelak v. Indiana Industrial Servs., Inc.,* 831 N.E.2d 765, 776 (Ind. App. 2005)). National Starch argues that this rule applies only to bids for public works projects. The Court need not resolve that issue, however, because even assuming that US Rail is correct that it applies in this case, US Rail's breach of contract claim must fail.

In instances in which a contract is formed by the acceptance of a bid,

> [t]he contract consists in the advertisement for bids, the proposal of the bidder, and the acceptance of the proposal by the public authorities. The bidder's proposal, by necessary implication, incorporates all the terms and conditions that are contained in the invitation to bid. The plans, specifications, and estimates constitute part of the contract, and it must be executed in conformity thereto.

AM. JUR. PUBLIC WORKS § 62. US Rail implicitly acknowledges that fact by pointing to the three-year term found in the bid invitation. As noted above, the bid invitation also provides that violation of safety procedures is grounds for immediate termination of the contract. There is no dispute that the March 11th inspection revealed numerous safety violations by US Rail. There is also no dispute that it was these safety violations that led National Starch to negotiate an agreement with Railserve to replace US Rail and ultimately to terminate the contract with US Rail.[3] The uncontroverted evidence of record that National Starch terminated its contract with US Rail because of safety violations by US Rail compels a finding, as a matter of law, that National Starch did not breach the contract, but rather simply exercised its right to terminate the contract pursuant to its express terms. Accordingly, National Starch's motion for summary

---

[3]US Rail states in its response that the "basis for the termination" was the March 17th walk-out. It then suggests that Railserve and Sturch conspired to cause the walk-out. US Rail cites to no admissible evidence that supports its conspiracy theory, and the deposition testimony US Rail cites in support of its assertion that the walk-out was the basis for National Starch's termination of the contract does not support that assertion.

judgment is **granted** with regard to the breach of contract claim.

### *Money Due on Account*

In its Second Amended Complaint, US Rail asserts a claim for "money due on account," alleging that National Starch has failed to pay invoices for US Rail's services. This claim is unequivocally included in National Starch's motion for summary judgment. It appears to the Court that US Rail has abandoned this claim, inasmuch as it does not address it in its response to National Starch's motion and indeed states in the response (with regard to the breach of contract claim) that "National Starch remunerated US Rail for the switching services performed at the Indianapolis, Indiana plant pursuant to the agreed upon terms for each month thereafter thru March 17, 2008." US Rail Response at 6. Accordingly, the Court **grants** summary judgment in favor of National Starch on this claim.

### *Conversion and Trespass*

US Rail's conversion claim against National Starch is based upon its allegation that National Starch retained and used Locomotive 115 for its own benefit after the contract was terminated on March 17, 2008, and damaged it in the process. In Indiana,

> [c]onversion, as a tort, is the appropriation of the personal property of another to the party's own use and benefit, or in its destruction, or in exercising dominion over it, in exclusion and defiance of the rights of the owner or lawful possessor, or in withholding it from his possession, under a claim and title inconsistent with the owner's.

*Schrenker v. State*, ____ N.E.2d _____, 2010 WL 173277 at * 3 (Ind. App., Jan. 19, 2010). National Starch admits that Locomotive 115 remains at the Plant, but asserts that is the case only because it is inoperable and US Rail has been unable or unwilling to transport it despite being

9

given ample opportunity to do so. Further, the uncontroverted evidence of record[4] is that National Starch repeatedly requested that US Rail remove its locomotives from the Plant, beginning on March 18, 2008, and has repeatedly given US Rail access to the Plant to inspect, remove parts from, and repair (or attempt to repair) its locomotives.

US Rail points to three pieces of evidence in support of its conversion claim. First, Smith testified that on March 18th he saw Sturch at the Plant operating the locomotive that US Rail had leased to replace Locomotive 115 when it was taken out of service. This is, of course, irrelevant to US Rail's claim that National Starch converted Locomotive 115. Next, US Rail points to testimony by Smith that another US Rail employee told him that one of the brake shoes had been completely burned off of Locomotive 115 and the housing for the brake shoe had been partially burned off, which indicated to Smith that the locomotive had been used. Unfortunately for US Rail, however, Smith's testimony on this issue consists of inadmissible hearsay and therefore cannot be used to defeat summary judgment. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment.").

US Rail has submitted no admissible evidence that supports its allegation that National

---

[4]US Rail points to the following deposition testimony of Kenny Smith as evidence that US Rail was prevented from retrieving its property following the termination of the contract:

Q: To your knowledge, at any time has National Starch prevented US Rail from retrieving US Rail's locomotives from National Starch.

A: Well, they told us they didn't want us back in there. I don't know how you would take that, but that's what we were told.

Smith Dep. at 111. This vague testimony is insufficient to show that National Starch hindered any effort by US Rail to recover possession of Locomotive 115.

Starch converted Locomotive 115. Accordingly, National Starch's motion for summary judgment is **granted** with regard to US Rail's claim for conversion.

### *Tortious Interference*

US Rail asserts a claim against Defendants Sturch, Rusk, Holding and Railserve for tortious intereference with US Rail's contract with National Starch.

> Five elements are necessary to support a claim for tortious interference with contract: [1] existence of a valid and enforceable contract, [2] defendant's knowledge of that contract, [3] defendant's intentional inducement to breach that contract, [4] the absence of justification, and [5] damages resulting from the breach.

*Gatto v. St. Richard School, Inc.*, 774 N.E.2d 914, 922 (Ind. App. 2002). Because the Court has determined that no breach of contract occurred, US Rail's tortious interference claim must fail as a matter of law. *See id.* ("Here, St. Richard's did not breach Gatto's contract. Thus, as a matter of law, Gatto may not succeed on a claim for tortious interference with contract."). Accordingly, Defendants' Sturch, Rusk, Holding, and Railserve are entitled to summary judgment on that claim.

### *Defendant Sturch's Counterclaim*

Defendant Sturch alleges in his counterclaim that US Rail has not paid him wages it owes him in the amount of $2,000 for the period of March 1, 2008, to March 17, 2008, and accrued vacation pay in the amount of $1666.67, in violation of the Indiana Wage Statute. This Court's jurisdiction over this claim is based upon 28 U.S.C. § 1367, which provides for the exercise of supplemental jurisdiction over state law claims that are closely related to claim(s) over which the Court has original jurisdiction. In this case, the Court had diversity jurisdiction over the Plaintiffs' claims, but the amount in controversy in the counterclaim is not sufficient to confer

independent jurisdiction over it. Now that the Plaintiffs' claims have been resolved, "the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts." *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008); *see also Sanchez & Daniels v. Koresko*, 503 F.3d 610, 615 (7th Cir. 2007). There are exceptions to that general rule, and the court should decide the merits of a supplemental state claim when (1) the statute of limitations has run, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is "absolutely clear" how the state claims should be decided. *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008).

None of those exceptions apply here. There is no impediment to Sturch filing his claim against US Rail in state court; none of this Court's resources have been expended on the state law claims, *cf. id.* ("the district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case"); and it does not appear to the Court that the proper resolution of the state law claims is so obvious as to overcome the presumption that remand is appropriate.[5] Accordingly, the Court declines to

---

[5] If Sturch were entitled to summary judgment on his counterclaim, this exception arguably would apply. However, in his motion for summary judgment Sturch provides no evidence to support his claim that he was not paid the amounts he claims he was owed. The deposition testimony he cites to establishes only that he was entitled to two weeks vacation pay per year; it does not establish that he was not paid. The other "evidence" to which he cites are simply allegations in his counterclaim, which is not evidence at all. While US Rail did not come forward with any admissible evidence to refute Sturch's allegations, it was not required to do so, as "the party opposing summary judgment is not required to rebut factual propositions on which the movant bears the burden of proof and that the movant has not properly supported in the first instance." *Boim v. Holy Land Found. for Relief & Develop.,* 549 F.3d 685, 718 (7th Cir. 2008) (citations omitted). Accordingly, Sturch has not demonstrated that he is entitled to summary judgment on his counterclaim.

continue to exercise supplemental jurisdiction over Defendant Sturch's counterclaim.

## CONCLUSION

For the reasons set forth above, summary judgment is **GRANTED** in favor of each Defendant with regard to all of the Plaintiffs' claims.  Defendant Sturch's counterclaim against US Rail is **DISMISSED WITHOUT PREJUDICE**.

SO ORDERED:    02/04/2010

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification